THE UNION SAVINGS ASSOCIATION, Respondent, *v.* JOHN J. EDWARDS *et al.*, Appellants.

1. *Practice, civil — Jury, special — Impaneling of, may be ordered, when.* — A court may, in its discretion, order a special panel to try a cause, and such order is no ground of objection unless it appear that the party objecting was prejudiced or injured by the action of the court.

2. *Evidence — Admissions of principal, in suit against principal and sureties.* — Admissions made by a defaulting bank teller to the president, when the default was first discovered, were competent evidence against him and his sureties, because they formed a part of the *res gestæ*, and were made by him while acting in the course of his official duty. But it would not be in his power afterward to make admissions to the detriment of his sureties. Where, however, suit was against himself and his sureties combined, such admissions would be evidence against himself, and the court should be asked to instruct the jury that such evidence should be disregarded so far as the sureties were concerned.

*Appeal from St. Louis Circuit Court.*

*Hudgens & Son, Peacock & Cornwell*, and *Cline, Jamison & Day*, and *Lackland*, and *S. Knox*, for appellants.

I. The appellants insist that the court erred in admitting the testimony of Charles Bell against the sureties of Edwards. The imaginary conversation to which he referred took place several weeks after Edwards had been discharged by the plaintiff. (1 Greenl. Ev., § 187.)

II. The sureties were discharged from liability on the bond for the reason that the plaintiff required of Edwards the discharge of other duties than those of teller, by reason of which the risk of

Edwards' sureties was greatly increased. (Morse on Banking, 207; Grant on Banks and Banking, 265–6; 11 Mo. 447; 21 Mo. 51.)

III. The by-laws, by which the duties of the officers of the bank were defined and prescribed, were clearly admissible in evidence.

IV. The custom of paying overdrafts had been so common as to prevent the plaintiff from recovery of Edwards' sureties for money paid in good faith on overdrafts.

V. The court erred in causing a venire to issue for a jury of bankers, merchants and manufacturers, against the objection of defendants.

*T. T. Gantt*, with whom were *Bakewell & Farish*, for respondent.

1. The court below was well warranted in ordering a special jury in this case. (Gen. Stat. 1865, ch. 146, p. 599, § 23.) 2. The testimony of Charles Bell was properly admitted against Edwards. If any other defendant wished the court to limit its application, he should have asked an instruction to that effect. 3. The record of the trial of the indictment against Edwards in the Criminal Court was properly excluded, being totally irrelevant. 4. The by-laws of the plaintiff were properly excluded. They do not attempt to define the duties of teller, and at best they are merely rules for the internal management of the affairs of the Union Savings Association; they constitute no contract between the bank and the external world. 5. The instructions given contain a correct exposition of the law applicable to this case. 6. The instructions refused were either inapplicable to the case at bar or contained erroneous declarations of law. 7. There was no refusal to permit the defendants to amend their answer. 8. There is no foundation in the record for the suggestion that the jurors were biased. 9. It was competent for the court to give the judgment shown by the record for the penalty of the bond and interest from the commencement of the action, restricting execution to the sum awarded by the jury and costs.

WAGNER, Judge, delivered the opinion of the court.

The respondent brought its action against the appellants for a breach of an official bond. The case shows in substance that on the 30th of June, 1866, Edwards being appointed teller of the Union Savings Association executed a bond for the faithful performance of his duties in that capacity. The penalty of the bond was for $15,000, and was signed by him as principal and the other defendants as sureties. The bond recited that Edwards had been appointed teller of the institution, and would have duties to perform as such, and would receive into his possession and have under his control money, property and effects of the institution, and was conditioned that he should execute said duties with integrity and fidelity, and well and faithfully perform and fulfill the trust in him reposed, and account for and render over, upon request, all money and property that might come into his hands, so that no default, fraud or failure should happen or be occasioned by neglect or failure on his part to perform his duties as teller. Edwards continued to act as teller until March 6, 1867, when he was discharged. On the 25th of February, 1867, he paid to Brentano $17,352.14 of money belonging to the respondent in excess of all that Brentano was authorized to check for. He concealed this payment until the 27th day of February, 1867, when, being notified that the committee would count cash on that day, he endeavored to have the counting postponed, and failing in this, he acknowledged the use that he made of the money. Subsequently Brentano paid $3,000 of the amount, and the remainder is still wholly unpaid.

The answer set up by way of defense that Brentano was a good customer of the association; that overdrafts were habitually allowed to customers; that Edwards had authority to allow them; that he had been appointed secretary *pro tem.* of the association, and in this capacity had an enlarged discretion to allow overdrafts; that the payment by him to Brentano had been made in good faith, in pursuance of the authority vested in him, and in the regular course of business. To this defense there was a replication denying that overdrafts were allowed by the association,

or that Edwards had any authority whatever to permit the same; denying that he had paid this money to Brentano in good faith, and setting up that it was in violation of express warning and prohibition as to Brentano. Jennings, one of the sureties, set up as an additional defense that he was induced to sign the bond as surety by fraudulent misrepresentations made to him by the plaintiff as to the nature of the risk he would run by so doing. A replication was also filed to this answer. The court ordered a special jury, and the verdict was for the plaintiff.

It is not our purpose to review the evidence or comment upon it, as the jury were the exclusive judges to determine its weight and value. It may be said, however, that the evidence shows most conclusively that Edwards, in paying the overdrafts to Brentano, acted in the capacity of teller, and in that capacity only. An objection is raised that the court erred in impaneling a special jury to try the case. But the statute expressly provides that all courts of record in which juries are required shall have the power to order a special jury for the trial of any civil cause, and, when ordered, the sheriff shall summon them according to the order of the court. (1 Wagn. Stat. 800, § 23.) The special panel may be ordered in the discretion of the court, and there is nothing disclosed here tending to show that the discretion was unwisely exercised. The mere objection is not sufficient; there must be something to show that the party was prejudiced or injured by the action of the court.

It is also assigned for error that the court improperly admitted the evidence of one Bell against the objections and exceptions of defendants. Bell testified that he met Edwards in the last part of March, and wished to see if he could or would secure the bank against his defalcations. Edwards said he thought he could. Witness asked him how he came to get into this trouble. He said it was through speculation; that he and Brentano had been speculating in gold and stocks. On cross-examination he testified that Edwards said he allowed Brentano to overdraw his account to pay up margins on gold operations, and that he had an interest in them; that they had bought gold bonds and stocks on joint account, and had lost money on them; that Brentano had lost

money in gold speculations, and there was where the money went to. This evidence was objected to as incompetent against the sureties. The court overruled the objection, and declared that if it was admissible for any purpose the court could not exclude it. Had the suit been against the sureties alone, the evidence would have been clearly inadmissible. It is not within the power of the principal, after a transaction is past and gone, to make admissions to the detriment of his sureties. Greenleaf states the rule thus : "We are next to consider the admissions of a principal, as evidence in an action against the surety upon his collateral undertaking. In the cases on this subject the main inquiry has been whether the declarations of the principal were made during the transaction of the business, for which the surety was bound, so as to become a part of the *res gestæ*. If so, they have been held admissible ; otherwise not. The surety is considered as bound only for the actual conduct of the party, and not for whatever he might say he had done, and therefore is entitled to proof of his conduct by original evidence where it can be had, excluding all declarations of the principal made subsequent to the act to which they relate, and out of the course of his official duty." (1 Greenl. Ev., § 187.) Therefore the admissions which Edwards made to Rutherford, the president of the bank, when the default was first discovered, were competent evidence against him and his sureties because they formed a part of the *res gestæ*, and were made while acting in the course of his official duty ; but they would not be competent against the sureties after his official duties had ceased. But in the case at bar the action was against the principals and sureties combined. The evidence was certainly admissible against the principal, and the court should have been asked to instruct the jury that the evidence should be disregarded so far as the sureties were concerned. This was not done, and as the evidence was admissible for one purpose, the court was entirely justified in overruling the broad objection of the defendants.

The first instruction given for the plaintiff told the jury that "if they believed that Edwards, on or about the 25th of February, 1867 having charge and possession of the cash of the Union

29—VOL. XLVII.

Savings Association as teller thereof, did pay to Henry Brentano, or to any other person or persons upon the checks of Brentano, the sums of money in the petition mentioned, making over and above all money then deposited by or standing to the credit of the said Brentano on the books of the said Union Savings Association the sum of $17,352.14, and that of this sum only the sum of $3,000 has since been paid, and that the said Edwards had, after the making of the said bond and before the 25th of February, 1867, been specially cautioned and warned by the president or directors of said Union Savings Association not to allow the said Brentano any indulgence, then the said Edwards is a defaulter to the Union Savings Association in the sum of $14,352.14 ; and the jury so finding, will give a verdict against the defendants in the said sum of money, with six per cent. interest from the commencement of this action."

The second instruction told the jury that "though they might believe from the evidence that Edwards occasionally permitted some of the customers and depositors of the Union Savings Association to make overdrafts without apprising the president or obtaining his sanction therefor, yet if they believed that such conduct on the part of said Edwards was contrary to the general instructions given to him as teller in respect of all the customers of said association, and that in the case of said Brentano himself, the said Edwards had, within two months or thereabouts, been specifically cautioned and warned by the president or directors of said association not to permit any such overdrafts by said Brentano, then the defendants could not avail themselves of any such previous allowance of overdrafts by the said Edwards as a warrant for his permitting or making the payment of the money in the petition mentioned to the said Brentano or to the holder of his checks ; and such previous allowance constituted no defense to the action."

The third instruction told the jury that there was no evidence before them of any such representations on the part of the plaintiff to the sureties of Edwards to induce them to become sureties as to constitute any defense to the action. This instruction was undoubtedly correct. The evidence wholly fails to sustain the

allegations in the answer, that the signing as sureties was super-induced by the representations and conduct of plaintiff.

The court, at the request of the defendants, gave five several instructions:

"1. If the jury believe from the evidence that J. J. Edwards, with the knowledge of the plaintiff, its president and directors, was in the habit of paying overdrafts made by the depositors of the plaintiff; that in the matter of the overdrafts in question, said Edwards acted in good faith, in accordance with his best judgment, in the payment of said overdrafts, then plaintiff can not recover in this action unless it satisfies the jury by evidence that Edwards was prohibited from paying said Brentano's overdraft.

"2. Neither of the defendants in this suit are liable for any damage the plaintiff may have sustained by any act of said Edwards, which, by the common usage of the plaintiff, said Edwards was authorized to perform, unless such act was unlawful or such an act as shall prove to the satisfaction of the jury a want of integrity or fidelity on the part of the said Edwards.

"3. If the jury believe from the evidence that the defendant Edwards, as an officer of plaintiff, paid the checks of Brentano in the usual course of the business of plaintiff, and in a reasonable exercise of the authority and directions given him by the plaintiff in the discharge of his duties, without intending any fraud or injury to plaintiff, then plaintiff can not recover in this action.

"4. Neither of the defendants in this suit are liable except it be from some want of fidelity or integrity as teller of the plaintiff, by reason of which plaintiff sustained damages; or unless the plaintiff shall satisfy the jury by evidence that said Edwards failed well and faithfully to perform and fulfill the trust reposed in him as teller of the plaintiff; or unless the plaintiff shall satisfy the jury by evidence that said Edwards, when thereto required, failed to account for and render over all moneys, credits and effects that came to his possession as teller; or unless the plaintiff shall so satisfy the jury by evidence that some default, fraud or failure happened or was occasioned by neglect or omission on the part of said Edwards to perform his duties as teller.

"5. If the jury believe from the evidence that plaintiff had, for a long time previous to the defalcation charged in plaintiff's petition, authorized defendant Edwards, as an officer of plaintiff, to permit customers and depositors to overdraw their deposits, either by direct authority or sanctioning or approving such overdrafts, and that the defalcation charged was an ordinary overdraft by a customer of said association, in accordance with the custom established by plaintiff and within the discretion confided to said Edwards, then plaintiff can not recover in this action."

The declarations of law are so manifestly just, and present the whole case with such unquestionable fairness, that it is impossible to find any ground of complaint. Acting under the instructions the jury must have found that Edwards, in paying the overdraft, acted in violation of his duties and contrary to the express instructions of his superiors; that there was no custom authorizing his conduct, and that the default was occasioned by his neglect of duty and failure to comply with the conditions of his undertaking. The jury were the sole and appropriate judges of what the evidence proved, and, in the absence of any erroneous instructions as to the law by the court, their verdict must be regarded as final. Were we permitted to weigh the evidence, we should have no hesitation in coming to the same conclusion.

The court committed no error in refusing the additional instructions asked by the defendants. The whole case was completely covered by the instructions already given; besides, some of them were wholly unwarranted by the evidence in the cause.

In viewing the whole record we have not been able to find anything objectionable, and are clearly of the opinion that the judgment should be affirmed.

Affirmed; the other judges concurring.

A motion for rehearing was filed in this case and overruled.