McBean v. Fox et al.

JOHN McBEAN

v.

HARRY FOX ET AL.

| 1 | 177 |
|---|---|
| 99 | 187 |
| 1 | 177 |
| 100 | 406 |

1.  DECEIT—MOTIVE—IMPLIED FRAUD.—In an action for deceit in the sale of personal property, the representation made must be untrue, the party making it must know that it is false, and the party to whom it was made must have relied on the representation as true, and have been induced to act upon it.  But when these facts exist, it is immaterial what may have been the actual motive with which the representation was made.  If a party makes a representation which he knows to be false and which is calculated to induce another to act upon it, and thereby occasions an injury, the law implies fraud, and it is not incumbent upon the plaintiff to prove a fraudulent motive.

2,  EVIDENCE OF GOOD CHARACTER.—In actions of this character, evidence of general business integrity is not admissible to repel the presumption of fraud.

3.  DECLARATIONS OF AGENT.—The representations in question were made by a broker in negotiating the sale of a promissory note; *Held,* that the making of such statements was fairly within the scope of his agency, and that the general power to negotiate would by implication include the power to give such information as would ordinarily be called for.

4.  PROOF OF CLAIM IN BANKRUPTCY.—The fact that the plaintiff had

12

proved his claim in bankruptcy against the defendants, and received a dividend thereon, does not estop him from proceeding against the defendants in an action for deceit in making the sale.

Appeal from the Circuit Court of Cook county; the Hon. Henry Booth, Judge, presiding.

Messrs. Miller & Frost, for appellant; argued that where the acts of an agent will bind his principal, his representations as to the subject matter will also bind him, and cited Sanford v. Handy, 23 Wend. 265; American Fur Co. v. United States, 2 Pet. 364; Jeffrey v. Bigelow, 13 Wend. 518; Story's Agency, § 134; 4 Tenn. R. 177; Mower v. Hapworth, 10 M. & W. 147; 13 Pet. 262; 2 Kent. Com. 482; Schneider v. Heath, 3 Camp. 506; Parsons v. Watson, 2 Camp. 785; Fuller v. Wilson, 3 Ad. & Ellis (N. S.) 56; Lobdell v. Baker, 1 Met. 193; Hunter v. Hudson R. R. Co. 20 Barb. 206; 1 Par. on Con. 620; Nat. Exch. Co. v. Drew, 32 Eng. L. & Eq. 1; Bennett v. Judson, 21 N. Y. 238.

That a representation, false in fact, though not proceeding from an immoral motive, is a fraud in law, and is the subject of an action for deceit: Polhil v. Walter, 3 B. & Ald. 114; Foster v. Charles, 6 Bing. 396; Smith's L. Cas. 6th Ed. 284.

Misrepresentation of a material fact constitutes a legal fraud, if acted upon, even though innocently made: Frenzel v. Miller, 37 Ind 1; Elder v. Allison, 45 Geo. 13.

A principal cannot enjoy the benefit arising from the act of his agent without adopting the instrumentality by which it was accomplished: Elwell v. Chamberlain, 31 N. Y. 611; Smith v. Tracy, 36 N. Y. 79.

The court erred in permitting defendants to introduce evidence of their general reputation for business integrity: Gough & Herring v. St. John, 16 Wend. 645.

That the facts proved clearly establish a cause of action, and that proof of *scienter* was unnecessary: Gough & Herring v. St. John, 16 Wend. 645; Hilliard on Trusts, 13; Bennett v. Judson, 21 N. Y. 238; Elwell v. Chamberlain, 31 N. Y. 611; Smith v. Tracy, 36 N. Y. 79; Frenzel v. Miller, 37 Ind. 1; Elder v. Allison, 45 Geo. 13; Monroe v. Pritchell, 16 Ala. 768; Milne v. Marwood, 28 Eng. L. & Eq. 373.

McBean v. Fox et al.

Messrs. Tenneys, Flower & Abercrombie, for appellees; as to the representations made by the broker, cited Merwin v. Arbuckle, 81 Ill. 501.

As to authority of agent: Whart. on Agency, § 127.

Upon the admissibility of evidence of general good business reputation: 1 Greenl. Ev. § 54.

Bailey, J.—In this case, appellant brought suit against appellees to recover damages for deceit in the sale and negotiation to him of a promissory note, of which the following is a copy:

" $3,000.                          Chicago, March 9th, 1875.

" Ninety days after date, we promise to pay to the order of Messrs. Atkins & Burgess, three thousand dollars, payable at our office, 90 and 92 Dearborn St., value received, with interest at ten per cent. per annum, after maturity.

Fox & Howard."

This note was indorsed in blank by Atkins & Burgess, the payees, and there also appeared on the back of it the following guaranty:

" For value received, we hereby guarantee the payment of the within note at maturity, with interest at ten per cent. until paid, and agree to pay all costs and expenses, paid or incurred in collecting the same.

" Atkins & Burgess."

The evidence shows that for a number of years prior to this transaction, the firm of Fox & Howard, consisting of Harry Fox and William B. Howard, had been extensively engaged as contractors, upon various public works, and especially in the building of bridges, and had acquired a considerable reputation for pecuniary responsibility; also that the firm of Atkins & Burgess, consisting of Charles H. Atkins and Thomas Burgess, were manufacturers of iron work, and had dealt quite largely with Fox & Howard, by way of furnishing them with iron work in their building enterprises. After the panic of 1873, the business of Fox & Howard rapidly declined, and

they became embarrassed with debts to a large amount, so that at the time of the transaction with appellant, they were owing about $150,000, besides some $80,000 or $100,000 more, secured on real estate.

In order to maintain their credit, Fox & Howard had then, for some time, been compelled to resort to a system of borrowing, to pay their paper as -it matured. As a scheme for raising money, an arrangement, as it seems, was entered into, by which Fox & Howard were to execute their promissory notes in various sums; payable to the order of Atkins & Burgess, and the latter firm were to indorse and guarantee the same, which paper was thereupon to be placed upon the market and sold, and the proceeds used for the benefit of Fox & Howard.

In pursuance of this scheme, a large number of these notes were executed and placed in the hands of different brokers in Chicago, for negotiation. Among others, one Long, a broker, was employed for this purpose, and the note in question, and others of like character, amounting in all to nearly $35,000, were delivered to him for sale. Long thereupon proposed to a son of appellant, who at the time had in his hands moneys of his father to loan, to buy this $3,000 note, and offered to sell it at a discount of two per cent. per month. It seems that appellant and his son had some acquaintance with the reputed financial standing of Fox & Howard, and also with the general character of the business in which they had been engaged; but so far as appears from the evidence, they were ignorant of the existing financial embarrassments of that firm, and of the purposes for which these notes were executed and placed upon the market.

The son communicated this offer to the father, and the next day the two met Long at their office, whereupon inquiries were made by appellant and his son about the character of the paper, the circumstances of its execution, and whether it was legitimate business paper.

The son, it seems, was somewhat suspicious that the note was not business paper, but only given in renewal of, and to take up an old note, from the fact that its amount was the same as

McBean v. Fox et al.

that of other paper of the same parties which he had previously seen.

Appellant also objected to taking it, because, in his opinion, no person doing a legitimate business, could afford to pay the discount offered. Long then explained that Fox & Howard had contracts to build six bridges, for which they were not to be paid until the bridges were completed; that they had let the iron work in these bridges to Atkins & Burgess, upon the same terms of payment; that Fox & Howard had advanced this paper to Atkins & Burgess to assist them in getting out the iron work, and that Atkins & Burgess were to lose the discount, as they were the parties to whom the money realized on the notes was to go.

Before the transaction was closed, appellant's son, as a matter of further precaution, called on Howard, of the firm of Fox & Howard, and after explaining that this note was offered to a friend of his, inquired of him its character, and received in reply substantially the same explanation given by Long. After hearing these representations, and believing them to be true, appellant purchased the note, and paid therefor a fraction over $2,814.

It seems that this particular note was placed in Long's hands by Atkins, and there is evidence tending to show that Atkins, on leaving it with Long, gave him the same account of its execution and character afterwards given to appellant and his son by Long.

At the time of these transactions, Fox & Howard had in fact no contracts whatever for the building of any bridges, and the representations made to appellant and his son of the consideration of the note, were wholly untrue; this and the other notes issued under like circumstances, being mere accommodation paper, executed for the mere purpose of raising money for Fox & Howard. The total amount of these notes negotiated by Long and other brokers, between the first day of February and the twenty-sixth day of April, 1875, was about $75,000. There is proof in the record that several of the other notes were sold by Long and other brokers to various parties, upon substantially the same representations made to appellant.

It appears that Fox & Howard, yielding to the pressure of their financial embarrassments, were adjudicated bankrupts upon a petition filed against them May 28th, 1875, and that a like adjudication against Atkins & Burgess was entered upon a petition, filed June 8th, 1875.

The jury, upon the trial below, found a verdict for appellees. A motion by appellant for a new trial being denied, judgment was rendered on the verdict against him for costs.

The first error assigned, which we deem it necessary to consider, presents for review the instructions given to the jury by the Court, at the instance of appellees.

The first and fourth of said instructions are as follows:

" 1. The plaintiff is not entitled to recover in this case, unless the jury believe, from the evidence, that the defendants made the representations alleged in the declaration, or some material portion of them; that such representations, or some material part of them, were false and were made with the intent to defraud the plaintiff, and that the plaintiff was induced by such representations to part with his money to defendants."

" 4. The intent with which representations are made should control the mind of the jury in determining this case. If the jury believe, from the evidence, that the witness Long in fact made the representations alleged in plaintiff's declaration, and believe the representations so made were untrue, yet in order to find for the plaintiff, they must further believe, from the evidence, that said representations were made by the authority of the defendants, and with the intent, on their part, to willfully deceive and cheat the plaintiff."

The law is well settled that to recover in an action for deceit, the representation must be untrue; the party making it must know that it is false, and the person seeking to recover must have relied on the representation as true, and have been induced to act upon it: Merwin v. Arbuckle, 81 Ill. 501; Wheeler v. Randall, 48 Id. 182; Hiner v. Richter, 51 Id. 299. These facts concurring, it is immaterial what may have been the actual motive with which the representation was made.

If a party makes a representation which he knows to be

false, and which is calculated to induce another to act on the faith of it, and occasions injury thereby, the law implies fraud, and it is not incumbent upon the plaintiff to prove a fraudulent motive, nor is it competent for the defendant to disprove it. Such motive arises as a conclusion of law. In Foster v. Charles, 6 Bing. 396, Tyndal, C. J., says: "It has been urged that it is not sufficient to show that a representation on which a plaintiff has acted was false within the knowledge of the defendant, and that damage has ensued to the plaintiff, but that the plaintiff must also show the motive which actuated the defendant. I am not aware of any authority for such a position, nor that it can be material what the motive was. The law will infer an improper motive, if what the defendant says is false within his own knowledge, and is the occasion of damage to the plaintiff." See, also, Foster v. Charles, 7 Bing. 105; Corbett v. Brown, 8 Bing. 33; Polhill v. Walter, 3 Barn. & Adolph. 114.

By these instructions the burden was imposed upon appellant to prove, not only that the representations were false to the knowledge of appellees, and that appellant was thereby defrauded, but also that there was in fact an affirmative intention on the part of appellees to produce that result. In this we think they were clearly erroneous.

The seventh instruction given on behalf of appellees, was as follows:

"7. The jury are instructed that the plaintiff cannot recover in this case, unless they find from the evidence that the said defendants, or some of them, did falsely, fraudulently and deceitfully represent to said witness Long, for the purpose of having the same communicated to the plaintiff, or whoever might become the purchaser of the note referred to in the declaration, and expecting the same would be communicated to the plaintiff in substance" (then follows a recital of the several false representations complained of, as the same are alleged in the declaration).

By this instruction, the representation shown by the evidence to have been made by Howard in person to appellant's son, is entirely ignored, and in effect withdrawn from the consideration of the jury.

This evidence was properly in the case, and the jury should have been permitted to consider it. If Howard himself made these representations, knowing them to be false, and thereby induced appellant to purchase the note, then, as to him, at least, appellant was entitled to recover.

But it is insisted that the declaration only avers fraudulent representations made through the agency of Long, and that under the averments of his declaration, appellant was not entitled to recover on the ground of false representations made by Howard in person.

Had it been objected to this evidence when offered, that it varied from the declaration, the court might properly have excluded it, or the plaintiff, having his attention thus called to the variance, might have asked and obtained leave to so amend his declaration as to make it accord with his proofs. No objection to the admission of this evidence seems to have been interposed, and so it was properly before the jury, and the court should not, by an instruction, have ignored its existence, and thus compelled the jury to disregard it.

But we think this instruction is otherwise objectionable. If appellees, in fact, placed this note in the hands of the broker for negotiation, and on doing so made to him any statements as to its character or consideration, without any restrictions upon him as to the uses to be made of such information, it does not seem to us to be material whether appellees, at the time, purposed or expected that such information would be communicated to the purchaser of the note, nor should the burden of proving such purpose or expectation be thrown upon the purchaser. The broker, in the execution of his agency, was at liberty to use the information thus obtained, and his doing so would be binding on his principals.

Moreover, in our opinion, the statements made by Long to apppellant were fairly within the purview of his agency. In negotiating the note he was vested with power to do such acts and give such information as would be usual in making such negotiation in the ordinary course of business. No ordinarily prudent man would be likely to purchase such a note in the market without requiring information as to its character, as to

McBean v. Fox et al.

being business or accommodation paper, etc., and a general power to negotiate, would, by implication, include the power to give such information as would ordinarily be called for and expected in such a transaction. But independently of this view, it is a well settled rule, applicable to special as well as general agents, that where the acts of the agent will bind the principal, there his representations, declarations and admissions respecting the subject matter, will also bind him, if made at the same time, and constituting part of the *res gestæ*. Story on Agency, § 134; Sanford v. Handey, 23 Wend. 260; American Fur Company v. The United States, 2 Pet. 364; Jeffery v. Bigelow, 13 Wend. 518.

This responsibility extends even to fraudulent representations made by the agent in the course of the execution of his authority. The agent is held out by the principal as fit to be trusted, and his fidelity and good conduct in the matter are thereby impliedly recommended, and where one of two innocent persons must suffer by the fraudulent act of a third, the one who enables such third person to commit the fraud must bear the loss. Sanford v. Handy, *supra*.

In Lobdell v. Baker, 1 Met. 193, it was held that where a broker makes sale of a note in the usual line of his business, his representations bind his principal, although they are made contrary to the principal's express instructions, unless such instructions are known to the purchaser.

Upon the principles already laid down, we think appellee's eleventh instruction was erroneous. That instruction was as follows:

"11. The jury are instructed as a matter of law, that a note broker, by virtue of his employment as such, has no authority to make any special representations as to the contracts of his customers, or as to the use the proceeds of the note he is authorized to sell is to be applied, and that if the broker Long made any such special representations to plaintiff concerning Fox & Howard, contractors, or the use to which the proceeds of the note were to be applied, and had no special authority from any defendant to make the same, then the defendants are not bound by such representations."

Upon the trial appellees were permitted, against the objecjection and exception of appellant, to give proof of their own standing and reputation for business integrity, and the admission of such evidence is assigned for error.

As a general rule, evidence of good character is confined to criminal prosecutions, involving questions of moral turpitude. There are, it is true, some exceptions, consisting of that class of actions where general character is drawn in question by the pleadings or points involved in the cause. In slander, the plaintiff's general moral character is an object of inquiry, with a view to the amount of damages he is entitled to claim. Cases of seduction, criminal conversation, and breach of promise of marriage, are also exceptions, and there are doubtless others. But where a civil action is brought for an injury to rights of property, though the injury is legally criminal, and involves moral turpitude, so that on an indictment evidence of character would be obviously receivable, the authorities are against its admissibility.

Civil actions, in which cruelty, gross fraud and even forgery is charged, are frequently presented with results deeply affecting the reputation of the defendant, yet we think, in such cases, it would be contrary to well established principles of the law of evidence, to permit the defendant to repel the proof of such charges by showing a good reputation. Gough v. St. John, 16 Wend. 645. In opposition to this view we are cited to 1 Greenleaf on Ev. Sec. 54, where the learned author says that: "Generally, in actions of tort, wherever the defendant is charged with fraud from mere circumstances, evidence of his general character is admissible to repel it." This proposition laid down by Mr. Greenleaf, seems to be based upon the authority of an early case in New York, which has now long since been overruled in that State. But even the case there cited entirely fails to justify the admission of this class of evidence in the case at bar. There the *acts* charged against the defendant were clearly proved, but the *fraudulent intent*, not being an inference of law, was sought to be inferred from slight circumstances, and to repel such inference, proof of good reputation was held properly admitted. In the present case, how-

ever, as we have already held, when it is established that the plaintiff has received injury in consequence of false representations made to him by the defendants, with knowledge of their falsity, the fraudulent intent follows as a *necessary legal conclusion*, and so cannot be rebutted by proof of good character or otherwise. We think the admission of this evidence was error.

But it is insisted by counsel for appellees, that even if appellees are chargeable with the false representations alleged, such representations were immaterial, as they affirmed nothing in regard to the value of the note, the solvency of the makers or indorsers, their ability or willingness to pay, or anything in which appellant had any interest. In this view we are unable to concur. These representations, in our opinion, were directly material, as bearing upon the ability of the makers to pay the note, and the resources likely to be at their command for that purpose. If Fox & Howard had been, at the time, in the execution of a contract to build several bridges, for which they were in due time to receive the very funds out of which this note was to be paid, the payment of the note at maturity was assured. If, on the other hand, appellant had been informed that the paper was accommodation paper, and was merely a means of borrowing money to pay an existing liability, and would itself be likely to be paid only in case the makers should be successful at its maturity in effecting further loans, he would undoubtedly have declined the purchase, and thus saved himself the loss he has sustained.

The evidence shows that appellant proved up his note in the Court of Bankruptcy, against the estates of Fox & Howard, and of Atkins & Burgess, and received, upon distribution of the assets of those estates, a dividend amounting to $630.

It is insisted, on behalf of appellees, that appellant, having elected to treat his note as a valid contract between him and appellees, and having proceeded in the manner and to the extent above indicated, to enforce the same against thier estates, is now precluded from the recovery of damages for the alleged fraud and deceit in the negotation of the note.

In this we think they are in error.

Had appellant, on discovering the fraud, desired to sue for and recover back the original consideration paid by him, he would unquestionably have been compelled to rescind and repudiate the contract before he could be permitted to maintain such suit. This case stands upon entirely different principles.

In order to recover for the deceit, he is not obliged to restore the property purchased, but may retain and avail himself of such property, to the extent of its value, and his doing so can only be considered upon the question of damages, in his action for the tort.

Other questions are raised by counsel in their arguments, which we do not deem it necessary to consider, but for the errors above noticed, the judgment will be reversed and the cause remanded.

Reversed and remanded.