CHARLES DRABEK ET AL.

v.

GRAND LODGE OF THE BOHEMIAN SLAVONIAN BENEVOLENT SOCIETY.

*Fraud—Action against Surety on Bond of the Secretary of a Secret Society—Evidence—Admissions of Principal, Since Deceased—Collateral Evidence—Letter—Fraud.*

Drabek v. Grand Lodge of the Bohemian Slavonian Benevolent Society.

1. It is fraud in law, if a party makes representations which he knows to be false, and injury ensues, although the motive from which the representations proceeded may not have been bad.

2. Under the rule that the evidence must correspond with the allegations and be confined to the point in issue, all evidence of collateral facts, or those which are incapable of affording any reasonable presumption or inference as to the principal fact in dispute, is inadmissible.

3. In an action against the sureties on the bond of the secretary of a secret society, it is *held:* That certain admissions by the principal on the bond, although made subsequently to the acts to which they relate, were properly admitted to charge the defendants, such admissions being against the interest of the principal and he having since died; that a letter of the principal containing collateral matters, written in extenuation of his conduct, was improperly admitted; and that, if said principal on said bond was a defaulter at the close of his previous term of office, and the president of said society, with knowledge of such fact, falsely represented to the defendants that his accounts were correct, and thereby induced them to deliver the bond in question, it is void and will not sustain the action.

[Opinion filed November 23, 1887.]

Appeal from the Superior Court of Cook County; the Hon. Kirk Hawes, Judge, presiding.

This was debt by appellee, as plaintiff below, brought against appellants, as defendants, upon a bond made February 14, 1885, by one John A. Schleiss, as principal, who had been elected to the office of grand secretary of plaintiff for the term of one year, and by the defendants as sureties, in the penal sum of $8,000, conditioned for the faithful performance by said Schleiss of the duties of said office and that he would deliver all property, books, papers and money belonging to the plaintiff, which he might have in his possession, to his successor in office, or to such person or persons as the plaintiff or its authorized officers might at any time direct. The breach assigned was, that divers sums of money belonging to plaintiff, amounting to $8,000, came to his hands as such secretary, which he, said Schleiss, converted and disposed of to his own use, and refused to pay over to plaintiff, or his successor in office, etc., although requested so to do.

Schleiss having died before suit brought, the action was against the sureties alone, and they pleaded traversing the

breach, *non est factum*, and several special pleas, one of which was the plea, in substance, that said Schleiss had held said office for the next preceding term of one year; that before the making and delivering of said bond the plaintiff by its officers falsely and fraudulently represented to defendants that said Schleiss had faithfully performed his duties as such secretary during his previous term of office, and had fully accounted for and paid over all moneys of plaintiff which had come to his hand during said year, as such secretary; averring that such representations were false at the time they were made, and known to the plaintiffs and its officers to be false and untrue when made; the said plaintiff and its officers well knowing that said Schleiss had converted to his own use and embezzled divers sums of money of plaintiff during said previous term of office; that defendants confiding in such representations and believing them to be true were induced to make and deliver said bond.

Issue was taken upon the averments of said plea by common traverse, and the case tried by jury, resulting in a verdict and judgment against the defendant, in the sum of $8,000 debt and $5,053.15 damages, and they appeal to this court.

On the trial the plaintiff gave in evidence the bond, and upon the question of breach assigned, the court allowed plaintiff under objection and exception of defendants to introduce in evidence a conversation had with Schleiss in August, 1885, after he had, by the action of the plaintiff, ceased to be in the service of the latter in any capacity, in which Schleiss admitted having received $583 during his former terms and not accounted for; and also a letter written by him to the Lodge, August 18, 1885, after he had ceased to be in any wise in the services of plaintiff, which letter was read to the jury, and is as follows:

" J. A. SCHLEISS,
" *Notary Public and Conveyancer*,
    " 729 South Halsted St.
                    " CHICAGO, 18th day of Aug., 1885.
" HON. GRAND LODGE ILLINOIS, C. S. P. S.
                    (in place.)

Drabek v. Grand Lodge of the Bohemian Slavonian Benevolent Society.

"The following I submit to you as a statement of my obligation to the Grand Lodge:

| | |
|---|---:|
| V. Misek.......................... | $ 750.00 |
| J. Karasek........................ | 750.00 |
| Jos. Zak.......................... | 750.00 |
| Jan. Sebek........................ | 750.00 |
| J. Wanzl, (Hanzl)................. | 750.00 |
| L. Navratil....................... | 750.00 |
| F. Weingartl...................... | 243.90 |
| K. Chobot } In settlement Fr. Berounsky } with Wocel | 285.35 |
| Upon ass't from 1st July received by me........................ | 691.50 |

|  |  |  |
|---|---:|---:|
| Makes a total................ | $5,720.75 | |
| Carried over................. | | $5,720.75 |

PAID OUT BY ME OR WHAT IS TO MY CREDIT.

| | | |
|---|---:|---:|
| V. Seyk, funeral of Misek.......... | $ 167.65 | |
| J. Wanzl.......................... | 377.65 | |
| V. Straka, on account of death No. 31. | 50.00 | |
| Half year's salary................ | 50.00 | |
| Expenditure for stamps, etc........ | 4.50 | |
| From Lodge Ill. No. 91, debt for ass't of 1st day of July............ | 17.80 | $ 667.60 |

| | |
|---|---:|
| Remaining for G. L. | $5,053.15 |

"On this occasion I can not omit to remark that this unfortunate affair happened by reason of great financial losses, but mainly on account of my serious illness, for I was unable to go among the people and thus the money lost itself from circulation. Had I been well, I guarantee that it would not have come to this, in spite of all the efforts of some of the brothers, who, knowing that a sick man can not defend himself, tried to ruin him in an assassin-like manner.

"Well, they were successful this time; not only have they brought me to the greatest want, but they have deprived my

family of sustenance. Let them remember this well. The times change and as the saying is: "God deals out requitals!"

"To my honorable sureties I promise and assure them that each and every one will be promptly paid. I think, that alrcady in May I will be able to apportion something, for by that time I hope to have together about $3,000.00. Schleiss may be besmirched, but his character will show that he has a different heart than those who have been publicly proclaiming me a bankrupt a year ago already.

"Here was an opportunity to sue for $10,000, but Schleiss did not do it. Let cowardice, gossip and Jesuitism flourish along. The world demands it!

"With all respect,<br>"[Signed]     J. A. SCHLEISS."

The court excluded much evidence offered by the defendants in support of their defense of fraud, but notwithstanding such ruling, there was evidence tending to prove the knowingly making of the false representations set out in the plea deemed sufficient to go to the jury. At the instance of the plaintiff, the court instructed the jury upon the issue of fraud as follows:

"But upon the question of the defendants' liability the court further instructs you, that if you believe from the evidence that before the bond in question was delivered, the defendants or any person acting for them and in their behalf appointed for that purpose, applied to the president of the society at a meeting of the Lodge for information concerning the financial affairs of the secretary, Schleiss (Abs. 87), and whether his accounts with the society were all right; and further find from the evidence that in reply to such inquiry (if made) the president of the Lodge, *then and there intending to deceive*, wilfully and falsely replied that the accounts of said secretary Schleiss were all right and correct, and the defendants or the person acting for them, were reasonably deceived and misled thereby, and thereby induced to deliver the bond; and if the jury further find from the evidence that at the time such statements were made (if you find they were made) they were false and untrue, and that the said Schleiss was then a defaulter, and the president of said society had full knowledge of such

Drabek v. Grand Lodge of the Bohemian Slavonian Benevolent Society.

fact (if you find such was the fact), but wilfully stated the contrary *for the purpose of deceiving the defendants, and to induce them to deliver the bond*, then and in such case the defendants would not be liable on said bond."

Messrs. KRAUS, MAYER & BRACKETT, for appellants.

When persons about to become sureties on a bond seek information from the party for whose benefit the bond is to be given, as to the previous honesty of the principal in the bond, it is the duty of the beneficiary to impart truthful information, if any. A concealment or false statement as to the previous conduct of the principal, under such circumstances, will discharge the sureties from all liability. Brandt on Suretyship and Guaranty, Sec. 348; Booth v. Storrs, 75 Ill. 438; Roper v. Sangamon Lodge, 91 Ill. 518; Ham v. Grove, 34 Ind. 18; Atlas Bank v. Bronnell, 9 R. I. 168; Franklin Bank v. Stevens, 39 Me. 532; Bank v. Haskell, 51 N. H. 116; Graves v. Bank, 10 Bush, (Ky.) 23; Best v. Brown, 3 Gifford, 450; Wayne v. Bank, 52 Pa. St. 343, and cases cited.

The court below erred in admitting in evidence as against these sureties the personal letter of Schleiss, dated August 18, 1885, admitting his defaults, the same being written and sent along after the *res gestœ*, and after his removal or suspension from office. It was pure hearsay as against appellants; was obtained solely for use on this trial, and was the only evidence of Schleiss' defaults introduced in the whole case. Better evidence of Schleiss' affairs and transactions existed in his books of account in the hands of appellee. 1 Greenl., Ev., Sec. 187; Hatch v. Elkins, 65 N. Y. 489; Stetson v. City Bank, 2 Ohio St. 167, 175; Hotchkiss v. Lyon, 2 Blackf. 222; Shelby v. Governor, 2 Blackf. 289; Chelmsford Co. v. Demarest, 7 Gray, 1; Pollard v. R. R. Co., 7 Bush., 597; State v. Bird, 22 Mo. 470; Association v. Edwards, 47 Mo. 445.

The objections by appellants to this letter in the court below were:

1. Because it covered a defalcation not covered by the bond in suit.

2. It is not admissible against these sureties because made

by a third party and being also an admission not a part of the *res gestæ.*

3. It is secondary evidence of the contents of Schleiss' books then in possession of said grand lodge.

Schleiss was absolutely suspended from office and all his functions as financial secretary were delegated to three other men before this letter of August 18, 1885, was written by him. See Greenl., Ev., Sec. 187.

The declaration or admission of the principal to bind the surety must in all cases be part of the *res gestæ* in reference to which the surety has covenanted, and that the principal's subsequent admissions, not a part of the *res gestæ,* do not bind, and are not competent as against the surety. Hatch v. Elkins, 65 N. Y. 489. See also Whitmarsh v. George, 8 B. & C. 556; Goss v. Watlington, 6 Moore, 355; Middleton v. Melton, 10 B. & C. 317; Hotchkiss v. Lyon, 2 Blackf. 222.

Messrs. Jones & Lusk, for appellee.

The record shows that the lodge did not suspend Schleiss but designated certain persons to perform his duties *pro tem.*

Schleiss was still in office and the preparation of the letter or report was clearly within the line of his duty. Whitmarsh v. George, 8 B. & C. 556; Middleton v. Melton, 10 B. & C. 317; U. S. v. Ganson, 19 Wall. 213; Pendleton v. Bk. of Ky., 1 T. B. Mon. 181.

It was an official act and binding upon the sureties. City of Chicago v. Gage, 95 Ill. 629; Bartlett v. Board of Education, 59 Ill. 369.

It was of the *res gestæ.* City of Chicago v. Gage, 95 Ill. 593, 628; U. S. v. Cutter, 2 Curtis, 629; Parker v. State, 8 Blackf. 295.

In none of the cases upon which appellants rely was the principal dead, whose admissions were sought to be proven, and in almost all of them that fact was alluded to in such a way as to make them good authorities for us in this case. See Stetson v. City Bank, 2 Ohio St. 179; Chelmsford v. Demarest, 7 Gray, 1; Smith v. Whittingham, 6 Car. & P. 78.

This class of declarations embraces not only entries in books

but all other declarations or statements of facts, whether verbal or in writing, and whether they were made at the time of the fact declared, or at a subsequent day.  1 Greenl., Ev., Sec. 147; Watkin v. Pierce, 21 Gratt. 722; White v. Choteau, 10 Barb. 202.

" Nor does it seem necessary that the declaration should have been made by persons in the course of any business or employment, or that declarations against interest should be contemporaneous with the facts to which they relate."  1 Phil., Ev., 248–277.

McALLISTER, J.    If Schleiss, the principal in the bond, was, at the close of his first term as secretary, a defaulter in his capacity as such officer, as respected a material amount of the funds of plaintiff below, as seems to have been the fact, and if such fact was known to plaintiff's president before, and at the time of the delivery by the defendants of the bond in suit, but unknown to the defendants, or any of them, and the latter, before they would deliver said bond, made or caused to be made inquiries of said president, or in open lodge, in his presence and hearing, for information respecting the condition of the accounts or financial relations with the plaintiff of said Schleiss as such officer, and if the fact of such defalcation was fraudulently concealed from them by the said president, or other agent of plaintiff, acting within the scope of his apparent authority, and having knowledge of such defalcation, or they falsely represented to the defendants that said accounts of said Schleiss were all right and correct, and thereby induced them to deliver said bond to plaintiff, then the same would be void and no recovery could be had upon it.  Smith v. The Bank of Scotland, 1 Dow. 272, 292 *et seq.;* Railton v. Matthews, 10 Cl. & Fin. 934; Lee v. Jones, 17 C. B. N. S. 482; Wayne v. Commercial Nat. Bank, 52 Pa. St. 250; Franklin Bank v. Cooper, 36 Me. 180; S. C., 39 Me. 542; Sovy ads. The State, 39 N. J. L. 132; Roper v. Sangamon Lodge, etc., 91 Ill. 518.

Now, by the instruction to the jury upon the issue of fraud, given at the instance of the plaintiff below, the court aug-

mented the burden of proof to which the defendants were subject under that issue, beyond what the law required, by directing them that it was incumbent upon defendants to show, in addition to the knowingly false representations, that they were made with the intention to deceive the defendants, and with the purpose of deceiving them and inducing them to deliver the bond.

The instruction was erroneous and misleading. It is fraud in law, if a party makes representations which he knows to be false, and injury ensues, although the motive from which the representations proceeded may have not been bad. Fraud will be inferred. Case v. Ayers, 65 Ill. 142; McBean v. Fox, 1 Ill. App. 177; Gough v. St. John, 16 Wend. 645; Railton v. Matthews, 10 Cl. & Fin. *supra.*

The error of that instruction clearly requires a reversal of the judgment. But there is another important question which will arise upon another trial, and which we can not, with propriety, avoid passing upon, viz.: The admission in evidence under the objection and exception of the defendants, of a conversation with Schleiss, and the letter written by him August 18, 1885, set out in our statement of the case, after he had been dismissed and ceased to be in the service of the plaintiff in any capacity. The statements made by him in neither the conversation nor the letter can be considered as part of any *res gestæ;* and the question being considered independently of the circumstance of his being dead, we think it clear, upon principle and authority, that the evidence was incompetent as being mere hearsay.

In speaking of the admissions of a principal as evidence against a surety upon his collateral undertaking, Greenleaf says: "In the cases on this subject, the main inquiry has been whether the declarations of the principal were made during the transaction of the business for which the surety was bound, so as to become part of the *res gestæ*. If so, they have been held admissible; otherwise not. The surety is considered as bound only for the actual conduct of the party, and not for whatever he might say he had done, and therefore is entitled to proof of his conduct by original evidence where it can be had,

excluding all declarations of the principal made subsequent to the act to which they relate, and out of the course of his official duty." 1 Greenleaf on Evidence, Sec. 187.

The correctness of the rules, with their qualifications as embodied in the above quotation, has been recognized and illustrated by some of the ablest courts in the country. Stetson v. City Bank, 2 Ohio St. 167, opinion by Ranney, J.; Hatch v. Elkins, 65 N. Y. 489; Union Savings Association v. Edwards, 47 Mo. 445; Chelmsford Co. v. Demarest, 7 Gray, 1.

But it is insisted in argument on behalf of plaintiff below that the admissions and declarations of Schleiss were receivable in evidence under the rule as to the declarations and entries of persons since deceased, made against their interest, being competent evidence; and the cases of Whitmarsh v. George, 8 Barn. & C. 556, and Middleton v. Melton, 10 Barn. & C. 316, are cited in support of the doctrine.

We are inclined to the opinion that the admission of Schleiss in conversation, of having received a specific sum during the business of his office, and he having since died, was competent. 1 Greenleaf on Ev. (May's Ed.) Secs. 151, 152, and authorities cited in notes; but that the admission of his letter of August 18, 1885, was not competent. The letter contains statements of amounts received by him; and then several statements of matters not relevant to any point in issue. The whole letter was given in evidence by the plaintiff under objections and exception by defendants. One of the rules as to the production of evidence is, that it must correspond with the allegations and be confined to the point in issue. "This rule excludes all evidence of *collateral facts*, or those which are incapable of affording any reasonable presumption or inference as to the principal fact or matter in dispute; and the reason is, that such evidence tends to draw away the minds of the persons from the point in issue, and to excite prejudice and mislead them." 1 Greenleaf on Ev., Sec. 52.

The assurance in the letter that his sureties would not suffer on his account, was well calculated to mislead the minds of the jurors. The plaintiff could, under no rule of law we are aware of, have given original evidence tending to prove that

there was a probability that the defendants might reimburse themselves if they had to pay the amount in question. Leach v. Nichols, 55 Ill. 273.

Besides, it is clear from reading the letter, that all the collateral matters adverted to and embraced in it, and which were received in evidence, are to be put upon the same footing of irrelevancy, and proceeded from motives of self-interest on the part of the writer. They were written in extenuation of his conduct, and not against his interest. We are well aware that some courts have held that where part of the entries or declarations are against the pecuniary or proprietary interest of the declarant, that would carry the whole. But we have been cited to and we can find no authority, which would authorize the introduction of such collateral matters when the party producing them would not be authorized to give original evidence of the same on account of their irrelevancy and mischievous tendency.

The judgment below should be reversed and the cause remanded.

*Reversed and remanded.*