[No. 2478.]

THOMPSON ET AL. v. THE COMMERCIAL UNION ASSURANCE COMPANY.

1. **Corporations—Insurance—Agent's Bond—Denial of Capacity to Sue.**

Where an agent executed a fidelity bond to an insurance company under the name in which it sues, and collected and received money on its account which he obligated himself in the bond to pay over, neither he nor his sureties can escape liability on the bond for a failure to pay over money collected, by denying the capacity of the company to sue.

2. **Insurance Companies—Capacity to Sue—Evidence—Appellate Practice—Abstract of Record.**

In an action by a foreign insurance company where plaintiff introduced in evidence a document to show its authority to do business in this state, and the abstract of record prepared by defendants on appeal fails to contain the document, it will be presumed that the document introduced in evidence was a certificate of the superintendent of insurance that the requirements of the law of the state had been complied with.

3. **Principal and Agent—Agent's Fidelity Bond—Action Upon—Evidence—Admissions.**

In an action by an insurance company upon an agent's fidelity

bond to recover money collected by the agent for the company which he failed to turn over to the company, monthly. statements made by the agent to the company in the course of his business as agent for the company showing the amount of money received for the company, and an admission of indebtedness by the agent to a representative of the company made in an attempt by the company to effect a settlement with the agent were admissible in evidence against the sureties as part of the res gestae.

**4.  Principal and Agent—Fidelity Bond—Liability of Sureties.**

If an agent who gave to an insurance company a fidelity bond faithfully paid over to the company all the money due to it on account of business done by him after the date of the bond, the conditions of the bond were fully performed, and it was not in' the power of the company or agent, or both acting together, to make any application of the money that would create a liability against the sureties on the bond.

**5.  Insurance—Action on Agent's Bond—Evidence.**

In an action by an insurance company upon an agent's fidelity bond, evidence offered by defendants to show that money remitted by the agent to the company after the execution of the bond, embracing money received for premiums on policies issued by plaintiff and other companies, was applied by plaintiff on an indebtedness of the agent made prior to the date of the bond, was properly excluded where there was no showing or offer to show how much of the money so applied was received for premiums on policies issued by plaintiff and how much on policies issued by other companies.

*Appeal from the District Court of Lake County.*

Messrs. PHELPS & PENDERY, and Mr. CHARLES CAVENDER, for appellants.

Messrs. BICKSLER, McLEAN & BENNETT, for appellee.

THOMSON, P. J.

The appellee brought this suit upon a bond executed to it on the 26th day of February, 1896, by the appellant, Thompson, as principal, and the appellants, La Salle and Kelly, as his sureties, conditioned for the faithful and punctual payment to it by Thompson as its agent of all amounts due or to become due

to it on account of moneys collected or received by him for premiums on policies of insurance and renewals thereof, or on any other account whatever. The complaint, after stating that the plaintiff was an English corporation, authorized to do business in Colorado, alleged the appointment of Thompson as the plaintiff's agent, and the execution of the bond on the day of its date; and further alleged that Thompson received as premiums on policies of insurance, in June, 1899, $322.44; in July, 1899, $126.39; in August, 1899, $121.07, and in September, 1899, $115.48, no part of which was paid over to the plaintiff.

Thompson and the sureties filed separate answers. By each the execution of the bond was admitted. Thompson denied that after the date of the bond he had collected any moneys as premiums on policies which he had failed to pay over to the company. He also put in issue the incorporation of the plaintiff, and its authority to do business in Colorado. The sureties likewise denied any default on the part of Thompson in the payment to the company of moneys collected for it; but they averred that prior to the execution of the bond, Thompson had, for a considerable time, been the company's agent, and had become indebted to it in a large sum; that, when they signed the bond, they were ignorant of the indebtedness, and that the company concealed the fact from them; that the company wrongfully applied sufficient moneys received from Thompson on account of business transacted after the execution of the bond to discharge the previous indebtedness, and in such manner created an apparent deficiency on account of which the suit was brought. They also put in issue the incorporation of the plaintiff and its authority to do business in Colorado. The trial resulted in a judgment against the defendants for $537.36, from which they appeal.

The defendants contracted with the plaintiff by the name in which it sues. Thompson cannot, after so contracting and receiving money on its account which he had solemnly obligated himself to pay over, escape liability by denying its capacity to sue; and his own liability is the measure of the liability of his sureties. Formal proof of the plaintiff's incorporation was unnecessary.—*Plummer v. Mercantile Co.,* 23 Colo. 190; *Lumber Co. v. Cotton,* 12 Colo. App. 375. The plaintiff offered in evidence a document of some kind to show its authority to do business in this state. Such authority is evidenced by a certificate of the superintendent of insurance that the requirements of the laws of the state have been complied with.— Mills' Ann. Stats., sec. 2217. The abstract prepared by the appellants does not contain the document, or state its contents; and not knowing what it was, we must presume that it was the certificate prescribed by the statute.

Four statements made by Thompson and forwarded to the plaintiff, one in June, one in July, one in August, and one in September, 1899, were admitted over the objection of the defendants. They seem to have been made and transmitted in the regular course of business. They showed money received by Thompson for the company as follows: In June, $322.44; in July, $126.39; in August, $121.07; and in September, $115.48. The plaintiff was also permitted against the protest of the defendants to prove that in October, 1899, in an attempt by the resident secretary of the company to effect a settlement with Thompson of the accounts between him and the company, Thompson agreed that he owed the company the several sums mentioned in the statements. It was further shown that afterwards certain credits accrued to Thompson on account of cancelled policies, and failure to collect a premium; and at the

trial it was shown, and was likewise testified by Thompson, that the actual balance due was $537.36.

The objection to the statements sent by Thompson to the company, and his admission of indebtedness made to the company's resident secretary, is that they amount only to declarations by Thompson, and not having been made in the presence of the sureties are not binding upon them. Whether the objection was well taken depends upon the circumstances under which the declarations were made. If they were made during the transaction of the business for which the sureties were bound, so as to become part of the *res gestae,* they were admissible against the sureties; otherwise not.—1 Greenlf. Ev., § 187; *Bean v. Insurance Company,* 10 Mo. 559; *Savings Association v. Edwards,* 47 Mo. 445. The statements objected to were made by Thompson while engaged in the performance of his duties as agent, and pertained to those duties. They therefore belonged to the *res gestae.* At the time he made the admissions to the company's secretary of his indebtedness to the company, he was still, so far as appears, the agent of the company. A settlement of his accounts, or an ascertainment of their condition as between himself and the company, pertained to the business in which he was employed; and as the admission was made in the course of an attempted settlement with the company, it was likewise part of the *res gestae.* We find no error in the rulings.

The sureties alleged in their answer that prior to the execution of the bond, Thompson was indebted to the company as its agent in a large sum; that the company paid itself the amount owing to it by him out of moneys which it received on account of business subsequently transacted for it, and thus created an apparent shortage in his accounts for the period covered by the bond. If Thompson faithfully

paid over to the company all moneys due to it on account of business done by him for it after the date of the bond, the conditions of the bond were fully performed, and it is entirely immaterial what disposition the company made of the money. It was not in the power of the company, or of Thompson, or of the company and Thompson acting together, to make any application of the money by which a liability might be created against the sureties.—*State v. Alsup,* 91 Mo.172; *Insurance Company v. Rogers,* 15 Colo. App. 23. But counsel complain that the court would not permit them to prove the allegations of the answer. They had the right to show that Thompson remitted to the company all moneys received by him on its account after the execution of the bond, and upon such showing would have been entitled to judgment for their clients. And it seems to us that proof of the receipts and remittances on account of the company's business, ought not to have been attended with difficulty. Mr. Thompson was a witness. His books, which he said were correct and accorded with the facts, must have shown each premium received, each item of expenditure or commission, and each remittance. No such proof, however, was attempted. What the defendants offered to prove was that the first four remittances made after the giving of the bond, embracing money received for premiums on policies issued by this and other companies, were applied by this company on the alleged previous indebtedness. The offer was coupled with a statement that counsel did not contend that the proposed evidence would show any specific sum paid upon any specific policy. The court refused to permit the introduction of the evidence. We are unable to discover error in the refusal. The sureties were entitled to credit for all premiums on policies issued by this company which were remitted to it; but, without

some showing which was not proposed, they were not entitled to credit for moneys received on policies issued by other companies. With those they had nothing to do, and the plaintiff's disposition of such other moneys was not subject to objection from them. The evidence would not have shown what portion of the remittances consisted of premiums on the plaintiff's policies, and what not. From it, as proposed, neither court nor jury could have found the amount for which the sureties were entitled to credit.

A paper was introduced without objection which counsel styled "the account of Mr. Thompson with the company." It purported to show a debt of Thompson to the company for November and December, 1895, and January and February, 1896, of $1,500.66. It also purported to show the monthly balances for business done from March, 1896, to September, 1899, and the remittances to the company during the same period. The monthly balances aggregated $11,553.80, and the remittances $12,519.20. Whence this account was derived, we are not advised; but supposing it to have been taken from Thompson's books, and to be a correct statement, it was no more definite than counsel's previous offer. It was in evidence that time for the payment of premiums by the insured was often if not usually allowed. There was nothing in this statement of account to show that the remittances did not embrace premiums which accrued under the prior agency and were collected afterwards, and which were therefore properly applicable upon the old debt. Neither on its face does it show that all the premiums which accrued and were collected after the date of the bond, were accounted for to the company. We do not find that anything it contains is inconsistent with the *prima facie* showing made by the plaintiff.

The judgment must be affirmed.

*Affirmed.*